OPINION OF THE COURT
Edward J. McLaughlin, J.
The People of the State of New York have moved to disqualify[1] Kathleen M. Paolo, Esq., from representing Christopher Day, who is charged with criminal trespass in the third degree *212 (Penal Law § 140.10) under docket No. 5N111548. Ms. Paolo, who is awaiting trial under indictment No. 4235/85, is herself accused of various conspiracy, grand larceny, and scheme to defraud counts. In the latter case, the People allege that attorneys associated with the law firm of Daniel P. Foster, P. C. (Foster Firm), including Ms. Paolo, and support staff, including Harold Jones, stole almost $8,000 from the firm’s former client, Mia Prior.
The People also allege collaterally that Foster Firm attorneys, in an attempt to pervert the administration of justice, surrendered to the police one David Mitchell instead of Harold Jones, the defendant who was in fact being sought. In that connection, the People contend that Ms. Paolo, knowing the difference between David Mitchell and Harold Jones, acted improperly in regard to the alleged Mitchell-Jones switch. The basis for the People’s contention that Mitchell substituted for Jones is contained in indictment No. 7919/85. On January 21, 1986, Justice William Davis disqualified Ms. Paolo from representing David Mitchell.
On December 11, 1985, Day, a sometime volunteer for the Foster Firm, attended the Paolo case in Justice Herman Cahn’s courtroom, where the Paolo indictment is pending. Day is accused of trespassing after that calendar call in a restricted area used by the Department of Correction in the courthouse. It is claimed that he gained access by misrepresenting himself as a physician inquiring about a prisoner’s medical condition.
Defendant Day denies the charge. In a nine-page affidavit submitted on the application to have Ms. Paolo represent him, Day states that he held himself out merely as an anthropologist with a doctrine in that field and that he was admitted only to a Correction anteroom.
The affidavit in question was notarized by Ms. Paolo. I conclude, based on statements made by Day at a Gomberg-type hearing on the issue (People v Gomberg, 38 NY2d 307) held before me on January 17, 1986, that Ms. Paolo assisted Day substantially in the preparation of that affidavit, not only by reviewing it, but by suggesting legal language and theories. The People have characterized portions of Day’s affidavit as "declarations against penal interest.” Whether or not that is correct, I find that the affidavit contains at least certain admissions that Day need not have made and that an informed attorney, possessed of undivided loyalty, would not have allowed him to make.
*213 Defendant Day was arrested on December 12, 1985, when he appeared again as a volunteer in Justice Cahn’s courtroom. In Day’s possession were floor plans of part of the 111 Centre Street courthouse as well as floor plans of the New York County District Attorney’s office.
The People asserted two reasons why Ms. Paolo should not represent Day. First, if Ms. Paolo’s indictment results in a felony conviction, she would lose her license as a matter of law (Judiciary Law § 90 [4]) and be barred from representing him. Second, the People intend to call, and have already subpoenaed, Day to testify for the prosecution at Ms. Paolo’s upcoming trial. Their decision was based in part upon the affidavit signed by Day and prepared with Ms. Paolo’s assistance on the motion to disqualify Ms. Paolo. The prosecution has argued that Day will prove the "existence of * * * an agreement between the people who are alleged to be criminal conspirators” in the Paolo indictment.[2]
I find the People’s contention that attorney Paolo may, if convicted or engaged in a lengthy trial, be unavailable to represent Day an insufficient basis on which to disqualify Ms. Paolo where, as here, Day fervently wishes Paolo to represent him. Ms. Paolo is presumed to be innocent and no court may diminish either Ms. Paolo’s privilege of earning a living as an attorney or Day’s 6th Amendment right to counsel of his choice[3] on this ground.
Indeed, the disqualification of an attorney is an "extraordinary measure” (Matter of Abrams [John Anonymous], 62 NY2d 183, 199), never to be taken lightly or solely to make a prosecutor’s task more simple. The right of an individual to the attorney of his choice, while not an absolute right, is a *214 guarantee of constitutional dimension (United States v Cunningham, 672 F2d 1064). It will not be "unnecessarily obstructed by the court” (United States v Bernstein, 533 F2d 775, 788). Any attempt by the People to restrict that right must be scrutinized with care (United States v Hobson, 672 F2d 825, cert denied 459 US 906).
The People’s second argument, however, requires this court to remove Ms. Paolo.[4] Although the People state that Ms. Paolo will not be called to testify against Day, the People intend to have Day testify against Ms. Paolo. When this happens, indeed long before this happens, Ms. Paolo, the indicted attorney, will not be in a position to exercise her judgment "solely for the benefit of h[er] client and free of compromising influences and loyalties.” (Code of Professional Responsibility, EC 5-1.) Ms. Paolo’s personal interest in rendering harmless Day’s testimony would dilute her loyalty to him. Her "personal interests or desires will, or there is a reasonable probability that they will, affect adversely the advice to be given or services to be rendered the prospective client.” (Code of Professional Responsibility, EC 5-2; DR 5-101 [A].)
This court finds that Day may suffer, and probably already has sustained, injury to his defense by Ms. Paolo’s representation. A ruling not to disqualify Ms. Paolo would also handicap the People in eliciting testimony at trial from a witness who is presently also a client of a defendant (People v Hall, 46 NY2d 873, cert denied 444 US 848).
By arranging for Day to sign the affidavit discussed earlier *215 in an attempt to have herself declared his attorney of record, Ms. Paolo has shown how easily the right to effective assistance of counsel, which is as important as the right to counsel of one’s choice, may be impaired by a conflict of interest arising out of the possibility of an attorney using a confidence of a client to the client’s disadvantage. (Code of Professional Responsibility, DR 4-101 [B] [2].)[5] Such action runs counter to the view that an attorney "may not allow h[er] own interests to conflict with those of h[er] client. To hold otherwise would be to ignore the overriding public interest in the integrity of our adversary system” (Greene v Greene, 47 NY2d 447, 453). To safeguard against such conduct, this court is possessed of the "duty to protect the integrity of the judicial system and preserve the ethical standards of the legal profession” (Matter of Abrams [John Anonymous], 62 NY2d 183, 197, supra).
The testimony that the prosecution submits Day will offer against Paolo is not cumulative, uncontested, or irrelevant (United States v Cunningham, 672 F2d 1064, supra). The People urge that they need Day to testify against Ms. Paolo in order to establish the reason for which he possessed the aforementioned floor plans, the person who gave him the floor plans, the economic basis on which the Foster Firm remained viable, and the use of volunteers to aid in Foster Firm activities. The People concede that, as to the use of volunteers to establish the conspiracy, a volunteer other than Day could testify. However, the People argue, with merit, that they are certain only of what Day would testify to because only Day is "locked” into certain statements made in the affidavit presented by Ms. Paolo on her order to show cause. No testimonial hearing is necessary to decide the disqualification issue since neither Ms. Paolo nor Day has presented a reason to believe that Day’s testimony against Paolo would be uncontested, noncumulative, or irrelevant.
Day’s testimony, whether given reluctantly or not, may, together with the remainder of the evidence against her, follow Ms. Paolo, at least in theory, to a Grievance Committee even if she were acquitted at trial. Furthermore, Ms. Paolo may face disciplinary action simply for representing a client in a patent conflict of interest situation even if this court does *216 not disqualify her. (Code of Professional Responsibility, DR 5-101.) This possibility might also impact upon zealous advocacy.
Finally, an individual is not entitled to the attorney of his choice in a conflict of interest dilemma when the attorney is of divided loyalties even if the individual is capable of a voluntary, knowing, and intelligent waiver of the conflict. (Greene v Greene, supra; United States v Cunningham, supra.) Nevertheless, the court finds that defendant Day has not shown himself capable of executing an intelligent waiver. During the January 17 hearing, Day, despite his doctorate and background as an occasional community-law activist, conceded that he knew no law, confused a misdemeanor charge with an indictment, waffled initially about who prepared the affidavit that he signed, and misunderstood which side calls witnesses for the prosecution — all in the timespan of less than two minutes and without any cross-examination. Later he seemed to think that he could avoid being called as a witness by a disclaimer of knowledge on the case’s subject matter.
For the above reasons, Kathleen Paolo, Esq., is disqualified from representing Christopher Day in any manner on Criminal Court docket No. 5N111548.

. The case is presented to Supreme Court as follows. On December 13, 1985, while sitting in AR-3, I disqualified Ms. Paolo from representing Day until the People had an opportunity to be heard adequately in Criminal Court. Ms. Paolo then presented Justice Robert Haft with an order to show cause, which was signed, referring the matter to me. Thus, this is as much a motion for reconsideration of a prior ruling as it is a de novo motion to disqualify counsel.

. In addition to responding directly to the points raised by the prosecution, Ms. Paolo, in her memorandum of law, and Day, in his affidavit and follow-up letters, assert that Ms. Paolo is "uniquely qualified” to represent Day because of her ability to stand up to the "unethical conduct” of the Assistant District Attorney from the Frauds Bureau assigned to this case. First, this court has seen no conduct that on the part of the prosecution that may be viewed as unethical. Second, Day’s class B misdemeanor trespassing charge, despite the conflicting versions of fact, is a factually simple case. Any competent attorney would be able to put forward a defense.

. US Constitution 6th Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of counsel for his defense.” (Cf. NY Const, art I, § 6.) The right to counsel of one’s choice also implicates 1st Amendment freedoms (National Assn. for Advancement of Colored People v Button, 371 US 415; cf. NY Const, art I, §9).

. Indictment No. 4235/85, which accuses Ms. Paolo of conspiracy, is the indictment that superseded indictment No. 6868/84, which originally charged no Foster Firm attorney in the purported fraud. Initially, defendant Jones was represented in the first indictment by Foster Firm attorneys. However, the Foster Firm was disqualified from representing Jones by Justice Herbert I. Altman on June 24, 1985, because, among other reasons, the complaining witness, Mia Prior, was previously represented by Foster Firm attorneys (see, T.C. Theatre Corp. v Warner Bros. Pictures, 113 F Supp 265, 268 [counsel owes a duty of loyalty to former, as well as present, clients]). The two other grounds on which the Foster Firm was disqualified were first, that counsel may have been witnesses to the fraud and second, that since Foster Firm attorneys were targets of a Grand Jury investigation relating to indictment No. 6868/84 the interests of Jones and the Foster Firm collided dramatically. As to the last ground, this court’s present ruling disqualifying Ms. Paolo from representing Day is a logical extension of Justice Altman’s ruling disqualifying Foster Firm counsel, including by reference Ms. Paolo, who is alleged by the People to have strong ties to the Foster Firm, from representing Jones.

. Although Code of Professional Responsibility, DR 4-101 (C) (4) provides an exception to revealing client confidences prohibited by DR 4-101 (B) (3) when necessary to defend against an accusation of wrongful conduct, this court declines to extend Ms. Paolo’s right to cross-examine Day into a right to represent him at the same time in his own criminal case.